The court will proceed to the third case, the United States v. Evans. Mr. Greener May it please the court, my name is Joseph Greener and I represent the defendant appellant in this matter, Mr. Charles Evans. Your honors, today we'd like to focus on the first issue of our brief, the maintaining the premises enhancement. In essence, the district court judge, contrary to this court's precedent, determined that directing individuals was sufficient for demonstrating controlled access under the enhancement. Today, it's the government's burden to prove that a particular sentencing enhancement is warranted, according to this court in Hines. In doing so, this court should review the district court's application of the sentencing guidelines under a de novo standard of review. For the maintaining a premises enhancement, the court looks at two different factors, according to the commentary for 2D1.1. First, whether the defendant held a possessory interest in the property, meaning that he owned or rented it. And second, whether the defendant controlled access to or activities at the premises. In this instance, the government has conceded that the first factor is not present. Therefore, this court has looked at three different cases thus far on the enhancement, and in all three of those cases, the first factor was present. And those are the Sanchez case, as well as the Flores-Ola case, both from 2013, included in our briefs. And there's been a subsequent case, Sanchez as well, from 2016, that also came after the briefs. So just similarly, all three of those cases, the possessory interest factor was present. So to determine what to do when the first factor of the possessory interest factor is not present, we look to cases outside of our circuit of evidence for the second factor. And those both come from the First Circuit in Jones from 2015, and the Eighth Circuit in Renteria from 2014. So let's talk about some of the facts in this case, because William's apartment really played a significant role in the enterprise. I mean, Evans instructed her to retrieve drugs from hiding places in the apartment. He stored the drugs in the apartment. He told customers to go to the apartment to get the drugs. He packaged the drugs there, and he dealt drugs from the apartment 50 times. Seems to me that's plenty of circumstance to show that he was using those premises. Your Honor, for the controlled access factor, although it's a totality of the circumstances, those are factors that can be looked at. In the case law where the defendant did not have a possessory interest in the factor, typically there have been more to demonstrate that there was controlled access. And the factors that the First and Eighth Circuit have looked at is that in those instances, not only the defendant had a key or had access to the property, there was also facts in those cases that suggested that the defendant financially contributed to the property, that they paid rent payments, paid utility payments, and there was also evidence that they stored personal items of the property or that they stayed there themselves. And those facts we don't have present here, although there is evidence of some. Yeah, but there's certainly a lot of evidence about the fact that it was used to sell drugs. You would agree with that, right? Your Honor, there is evidence for use to sell drugs. However, and that's kind of the distinction between the maintaining a premises staffer. Yeah, but it's not just used to sell drugs. He actually sold drugs from the apartment at least 50 times and directed customers to go there. So, I mean, it's hard for me to imagine how someone doesn't have some control over the premises when he engages in that kind of behavior. Your Honor, first, the district court held that Mr. Evans had, at the transcript at page 11, that Mr. Evans only had indirect control over the property. And indirect control has never been determined as enough to meeting the controlled access factor. Subsequently, they also determined that it was merely directing people, and there needs to be more evidence than merely just directing people to the premises. Of the four control buys that were taking place, two of the buys actually took place at Mr. Evans' car. So although there is some evidence of directing, the directing should not be enough. The government in this case would say that directing is sufficient when there is constructive possession that is present. However, constructive possession was not relied upon by the district court as evidence of the controlled access factor, and constructive possession has never been used to satisfy the maintaining of premises. The government, excuse me, cites the Starks case as evidence of constructive possession, and that was a case of constructive possession of a firearm. The constructive possession should not be used for maintaining a premises, and that would actually run counter to the Acosta case from 2008 from this court, which adopts reasoning from a Morgan case from the Fifth Circuit in 1997 that specifically says that they are, quote, wary of ever equating possession with maintenance with constructive possession, meaning that constructive possession, although it is constructive possession is used in firearms cases, is not sufficient for the maintaining of premises argument. Well, what about control over her? It seems to me that that's the main connection. Even though he did whatever from a somewhat remote area, she pretty much did everything he said. Why she pleaded and got a lot lower sentence. Otherwise, the way you're arguing, it's all her. It's storing and distributing and everything else. Your Honor, in the Flores-Olag case from 2013, in that case when they looked at the second factor for controlled access, they slightly spoke to the idea of controlling another individual, and they said that the evidence for controlling another individual to satisfy this would have to show evidence of an abusive or authoritarian relationship, which the record does not reflect that evidence. The government, in their brief at page 4, describes the relationship between Ms. Strevins and Ms. Williams as a short-term relationship. It does not describe the abusive relationship. In that case, why they determined it as the control over the individual was because the defendant in that case controlled his girlfriend's use of her cell phone, what room she was allowed to access in the house. He told her whether or not she was allowed to answer the door, and it was an abusive relationship that kind of was more evidence of the controlled others to satisfy that factor, which we don't have present here. There's no evidence to suggest that Mr. Evans and Ms. Williams engaged in an abusive relationship, and merely the fact that he directed others to her property should not be enough to show that he controlled access, especially given the fact that he didn't own a possessory interest in this factor. So she's then the major distributor then? Your Honor, I'm not sure as to who's more of a distributor, but in order for him to then satisfy the controlled access factor, it would need to be more evidence of an abusive relationship between them to show that he could actually have controlled her. But since the factor says that when there's not a possessory interest, we have to look to whether they controlled access, controlled access to the property would suggest that Mr. Evans had more of an interest in the property, that he had a key to the property, that he paid for the rent or paid for some of the utilities, or that he even stored his personal items or stayed at the property. The Jones case from the First Circuit, in that instance, the defendant had a key to the property. He paid the rent. He even had duplicate keys that he gave out to co-conspirators showing that he not only had access himself, but could give access to other people. And he also stored his clothes and stored his toothbrush and slept there at times. And we don't have that evidence here. No, I actually don't. And what it really has is a really good deal for him because he's not proximate to the actual handoff and paying. That's great. That's usually when they have all these things on tape and everything else. So he's able to control that. I don't want to say like a robot or something, but he's eliminated just what you said and still having all these transactions. Your Honor, the idea that even if he didn't have possessory interest, there still are instances where the second factor of controlled access can be enough, but there needs to be more of an evidence there. And I think that the absence of these factors suggests that Mr. Evans did not control access to the property, that although he directed other people and referred them to Ms. Williams as a location where they could get the drugs, it's not necessarily enough to demonstrate that he actually controlled the access to the property. It could allow us to reach a slippery slope in the fact that drugs eventually have to be stored somewhere. So just merely that they're stored at a house shouldn't be enough to come under the maintaining a premises argument. In fact, this court in Thomas describes kind of the paradigm example of these cases as describing them as someone who had a supervisory or entrepreneurial role in the drug enterprise. And the district court judge said that Mr. Evans is a moderately substantial drug dealer and that his house necessarily wasn't the largest of stash houses. So in order for it to be present, we would need to see more evidence of the controlled access factor, especially given the fact that there hasn't been evidence of because there isn't evidence of the possessory interest factor. Do you want to reserve a few minutes? Yes, Your Honor. Thank you. All right. Thank you, Mr. Freeman. Mr. Burke. May it please the Court, Kevin Burke on behalf of the United States. The district court did correctly find that Mr. Evans had used Ms. Williams' apartment as a drug premises. And, Judge Bannon, you brought up an interesting point about how Mr. Evans could separate himself to some degree by using Ms. Williams as more of a primary distributor and using her apartment. But even to the extent he attempted to separate himself, he couldn't completely. For instance, if you look first at the five controlled buys, four of the controlled buys occurred within the apartment itself. You had Mr. Evans telling Ms. Williams to retrieve the drugs from the hiding place. In the fifth controlled buy, you had Mr. Evans meeting the cooperator in a parking lot and sending the cooperator up into the apartment of Ms. Williams. As Judge Williams pointed out, there are at least 50 occasions where drugs are purchased from this apartment. There are occasions in the record, uncontested in the pre-sentence report, where Ms. Williams and Mr. Evans are breaking up the heroin with a hammer, weighing it out, all using the apartment. As the district court found, this apartment was used for storage. It was used for distribution. You could compare it almost to a Walmart. You warehouse it. You sell it there. It's a storefront. Mr. Evans was not on the lease. That's true. That's possibly the only mitigating factor here for Mr. Evans. And as this court has found, it would defy reason to rely on that fact alone when you have other facts showing that somebody is actually using a premises for drug distribution, which Mr. Evans was doing in this case to a phenomenal degree. Under the totality of the circumstances, the district court was absolutely correct to find that Mr. Williams was using the house as a drug premises. As to point two in the brief, the district court also was correct to find that there should be no reduction for acceptance of responsibility in this case. We begin with the finding of the obstruction enhancement. It was challenged at sentencing but is not challenged here on appeal. So we operate from a presumption that the declination of acceptance is proper. Now, of course, finding obstruction is not automatic. It's a rebuttable presumption, but it's rebuttable only in the exceptional case, the extraordinary case. And the extraordinary case is outlined in the case law, recognized by Judge Peterson in this case. It's the sort of case where shortly after arrest there is a minimal act of obstruction, followed very quickly by abandonment of the obstructive conduct and acceptance of responsibility. By stark contrast in this case, there were 10 days after arrest where Mr. Evans engaged in obstructive conduct. He sent Ms. Williams and he sent Smiley, Mr. Warden. Now, it isn't just the message. The district court read the transcript, was fairly convinced by the transcript of the jail recording. This wasn't an attempt to intimidate a witness. He listened to the recording and found it even more compelling when he heard the tone. And it isn't just the message, it's a messenger. Mr. Warden is a person who went with Mr. Evans to collect a drug debt from Mr. Johnson, the witness that they attempted to intimidate. Mr. Johnson is a person who had his jaw broken by Mr. Evans, and Mr. Warden went with him on that occasion. And Mr. Warden went back the next day to collect $3,000 for the drug debt. Now, the breaking of the jaw was not obstructive because it happened prior to arrest, but it places the relationship in context. So it was definitely intimidation of a witness over a protracted period of time, not of the sort that is the extraordinary case of de minimis obstruction, quickly abandoned. It was extensive obstruction. Clearly, the district court was correct not to find acceptance of responsibility under such facts. Therefore, we ask that the district court's judgment be affirmed in all respects. Thank you. Thank you, Mr. Burke. Mr. Brainard. May it please the court, unless the court has any further questions, I think we'll submit the case at this time. I think that's the case. Thank you. Thank you, Mr. Brainard. The case is taken under advisement.